IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



07/26/2021

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **JASON D. EADY** | § | Case No. 20-40208 |
| xxx-xx-2557 | § | |
| 2500 Sierra Drive, McKinney, TX 75701 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| JASON D. EADY | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 20-04028 |
| | § | |
| UNITED STATES OF AMERICA | § | |
| on behalf of its | § | |
| Department of Education | § | |
| and | § | |
| THE PENNSYLVANIA | § | |
| STATE UNIVERSITY | § | |
| | § | |
| Defendants | § | |

## <u>MEMORANDUM OPINION</u>

ON THIS DATE the Court considered the "Joint Motion for Summary Judgment"

(the "Motion") filed by Defendants' the Department of Education (the "DOE") and the

Pennsylvania State University (the "Penn State")  (collectively, the "Defendants"), and

the respective objections, replies, and other documentation filed with respect to those

documents in the above-referenced adversary proceeding.  Mr. Jason Eady's (the

"Debtor" or "Plaintiff") original complaint in this adversary proceeding seeks to

discharge, pursuant to 11 U.S.C. § 523(a)(8), otherwise non-dischargeable student loans

held by Defendants.  The Plaintiff seeks this discharge on the basis that excepting these

student loans from discharge would impose an undue hardship on the Plaintiff and his

dependents.  Upon due consideration of the pleadings, the proper summary judgment

evidence submitted by the parties, and the relevant legal authorities, the Court concludes

that there is no genuine issue as to any material fact.  For the following reasons stated in

this Memorandum Opinion, the Defendants' Motion should be GRANTED.

## I. Jurisdiction

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334(a) and

157(a).  The Court has the authority to enter a final judgment in this adversary proceeding

because it constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(1).

## II. Procedural Background

On January 23, 2020, Plaintiff initiated the main bankruptcy case associated with

this adversary proceeding (the "Case"), by filing his voluntary petition for Chapter 7 relief

under Title 11 of the United States Code (the "Bankruptcy Code").  On February 12,

2020, Plaintiff initiated this adversary proceeding by filing his "Complaint to

Determining [sic] the Discharge of Student Loans" (the "Complaint").  Pursuant to the

undue hardship standard under 11 U.S.C. § 523(a)(8), Plaintiff sought a discharge of

outstanding student loans granted by the Defendants.  Included in the list of defendants

named by Plaintiff were Great Lakes Educational Loan Servicing Inc., Heartland, ESCI,

and Educational Credit Management Corporation, all of which were eventually

dismissed.[1]

On March 17, 2020, Penn State filed a "Motion to Dismiss Adversary Proceeding"

(the "Motion to Dismiss").  Plaintiff filed an "Amended Complaint to Determine

Dischargeability of Student Loans As A Response to Defendant's (Pennsylvania State

University) Motion to Dismiss" (the "Amended Complaint") on April 8, 2020.  After

filing separate answers to the Amended Complaint, the Defendants filed the Motion on

October 2, 2020, asserting that Plaintiff did not meet the undue hardship standard

required to receive a discharge of student loans under § 523(a)(8).  Plaintiff responded in

the "Plaintiff's Opposition to Defendants' Joint Motion for Summary Judgment" (the

"Plaintiff's Opposition"), arguing that he had proven undue hardship.

### III. Factual Background

The Debtor is recently divorced, and the non-custodial parent of two minor

children.[2]  As the non-custodial parent, the Plaintiff does not claim his children on his tax

---

[1] Agreed Order ECF No. 15; Order Dismissing Defendants ECF No. 33.

[2] Pl.'s Decl., 2 ¶ 7. ECF No. 71.

returns without express agreement by his ex-wife.[3]  He has been diagnosed with a chronic

medical condition but is able to work in a sedentary environment.[4]  One of the Plaintiff's

minor children has also been diagnosed with a developmental disorder.[5]

The Debtor obtained a Bachelor of Architectural Engineering from Penn State, and

a Masters in Civil Engineering from the University of Texas at Arlington, degrees for

which he procured a series of student loans from the Defendants.[6]  He is currently

employed as an associate structural engineer at a company entitled Pond, Robinson &

Associates, earning a gross annual income of $90,000.[7]

The Plaintiff acknowledges that on February 1, 2014, he executed a Federal Direct

Consolidation Loan Application and Promissory Note, and on or about April 14, 2014,

that the DOE disbursed loan proceeds for a cumulative sum of $106,137.46.[8]  Since the

disbursement of the Consolidation loan, the Debtor has made a total of $9,605.56 in

payments.[9]  Prior to filing for Chapter 7, Debtor enrolled in an Income-Driven Repayment

---

[3] *Id.* at ¶ 7.

[4] Ex. G at Nos. 7 and 8; Ex. C-Response to DOE's Request for Production, No. 7.

[5] *Id.*

[6] DOE's First Interrogatories, Ex. A at 2, ECF No. 61.

[7] Plantiff's Amended Complaint at 3.

[8] Defendants' Joint Motion Ex. D at 15; Ex. D-2.

[9] Defendants' Joint Motion Ex. D-3; Ex. D-4.

-4-

Plan called Revised Pay As You Earn (the "REPAYE").  At the time Debtor filed his

original complaint in this adversary proceeding, he sought to discharge approximately

$127,500.00 in student loan debt owed to the DOE, and approximately $7,500.00 in

student loan debt owed to Penn State.[10]

## IV. Relief Requested

The Defendants seek an order granting summary judgment excepting the

Plaintiff's student loans from discharge under 11 U.S.C. § 523(a)(8).

## V. Summary Judgment Standard

A court may grant summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)

(quoting Fed. R. Civ. P. 56(c)).[11]   Federal Rule of Bankruptcy Procedure 7056

incorporates Federal Rule of Civil Procedure 56 so as to apply to adversary proceedings.

Thus, if summary judgment is appropriate, the Court may resolve the case as a matter of

law.

---

[10] Defendants' Motion at 2.

[11]  Pursuant to the scheduling order issued in this adversary proceeding, motions for summary judgment are required to comply in format and content with Local District Court Rule CV-56 and such motions shall be decided under the procedures stated therein.

The moving party always bears the initial responsibility of informing the court of the basis for its motion and any evidence which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of proof at trial. If, as in this case, the nonmovant "bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A fact is material only if its resolution would affect the outcome of the action..." *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). Thus, the nonmovant must evince more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the nonmoving party were to present these factual disputes at trial, they must be such that a rational fact finder might find in favor of the nonmoving party. *Id.* at 587. "All reasonable inferences must be viewed in the light most favorable" to the nonmoving party, and "any doubt must be resolving in favor of the nonmoving party." *In re Louisiana Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (citing *Matsushita*, 475 U.S. at 586.).

## VI. Analysis

Under 11 U.S.C. § 523(a)(8), "a loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit" shall not be discharged "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents..." There is no exact definition for the term "undue hardship" in the Bankruptcy Code, and one has not been endorsed by the United States Supreme Court. 11 U.S.C. § 523(a)(8). The Fifth Circuit has adopted the Second Circuit's three-prong *Brunner* test for evaluating undue hardship claims. *U.S. Dep't. of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 91 (5th Cir. 2003) (citing *Brunner v. N.Y. State Higher Educ. Services Corp.*, 831 F.2d 395, 396 (2nd Cir. 1987)). In order to satisfy the test and receive a student loan discharge, a debtor must demonstrate, by a preponderance of evidence, that:

> (1) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loan;
>
> (2) additional circumstances exist indicating that the debtor's current state of affairs is likely to persist for a significant portion of the repayment period of the student loan(s); and
>
> (3) the debtor has made good faith efforts to repay the loan.

*Id*. at 396. If the debtor is unable to prove even one of the prongs, he does not meet the

standard for undue hardship.

A. Minimal Standard of Living

Under the first element of the *Brunner* test, a debtor must show that he cannot maintain, based on current income and expenses, a "minimal standard of living" for himself and his dependents if he is forced to repay the student loan. *Id.* Although there is no uniform definition for "minimal standard of living," many courts "require more than temporary financial adversity and typically stop short of utter hopelessness."[12]

This Court has used a two-step analysis when considering a debtor's minimal standard of living: "(1) the evaluation of the debtor's present standard of living based upon her lifestyle attributes which appear from the record; and (2) whether the forced repayment of the student loan obligation will preclude the debtor from maintaining a minimal standard of living." *Williams v. Tex. Guaranteed Student Loan Corp. (In re Williams)*, No. 15-41814, 2017 WL 230349, at *6 (Bankr. E.D. Tex. May 25, 2017) (citing *Naranjo v. Educ. Credit Mgmt. Corp. (In re Naranjo)*, 261 B.R. 248, 254-55 (Bankr. E.D. Cal. 2001)). Overall, the first prong "requires the debtor to demonstrate that he or she is attempting to minimize living expenses and maximize" income. *Justice v.*

---

[12] *White v. Educ. Credit Mgmt. Corp. (In re White)*, No. 07-41509, 2008 WL 5272508, *at 5 (Bankr. E.D. Tex. Dec. 17, 2008) (quoting *Nary v. The Complete Source (In re Nary)*, 253 B.R. 752, 761 (N.D. Tex. 2000)) (quoting *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 437 (6th Cir. 1998)).

*Educ. Credit Mgmt. Corp. (In re Justice)*, No. 14-13684, 2016 WL 6956642, at *3

(Bankr. N.D. Miss. Nov. 28, 2016).

The first step in the *Williams* analysis focuses on a debtor's *present* standard of

living. *Williams*, 2017 WL 2303491, at *5. In this case, the Plaintiff's income exceeds

the amount listed for a family of three under the federal poverty guidelines.[13] Although

he previously earned a higher salary, the Court finds the Plaintiff's explanation for his

current salary to be sufficient, and in viewing the facts in the light most favorable to the

nonmoving party, the Court finds that the Plaintiff has maximized his current income.

Thus, the Court turns to whether the Plaintiff has minimized his expenses.

At the start of this adversary proceeding, the Plaintiff's monthly budget had a

deficit.[14] Thus, we look more closely to the line items at issue in the Plaintiff's answers

to Defendants' interrogatories, specifically to the following disputed expenses: (1)

---

[13] The Court takes judicial notice that the Plaintiff's household is a family of three for the purpose of considering the relevant federal poverty guidelines, as well as the household expenses. Neither § 523(a)(8) nor the Fifth Circuit define how to calculate household size based on the number of dependents. Cases involving split child custody are more complex. Although the Plaintiff does not have primary physical custody of his children, he has to maintain a certain lifestyle in order to care for the children while they are in his custody. Considering this reality, as well as the fact that the Court must consider evidence in the light most favorable to the nonmoving party, the Court will treat the Plaintiff's household as a family of three.

[14] Plaintiff's Amended Complaint, Ex. 2, ECF No. 32; DOE's First Interrogatories, Ex. A at 8, ECF No. 61.

monthly 401(k) contribution,[15] (2) children's educational funds, (3)  security system, (4) home warranty plan, (5) cable television, (6) cell service, and (7) internet.

First, while understandable that the Plaintiff has attempted to save for the future, a minimal standard of living requires "more than a showing of tight finances."  *Williams*, 2017 WL 230349,  at *6 (quoting *Elmore v. Mass. Higher Educ. Assistance Corp. (In re Elmore)*, 230 B.R. 22, 26 (Bankr. D. Conn. 1999)).  Although arguably important, monthly contributions to a 401(k) are not a necessary expense for the Debtor at present. Bankruptcy requires a special financial sacrifice in order to gain the fresh start offered by discharge. *See Educ. Credit Mgmt. Corp. v. Young*, 376 B.R. 795, 799 (E.D. Tex. 2007) (finding the debtor's monthly contribution to 401(k) to be "incompatible with the undue hardship standard Congress chose to apply to discharges of student loans) (citing *Speer v. Educ. Credit Mgmt. Corp. (In re Speer)*, 272 B.R. 186, 188-89 (Bankr. W.D. Tex. 2001)). The same reasoning applies to the Debtor's contribution to his children's educational

---

[15] The Plaintiff cites *Larson v. U.S. (In re Larson)*, 426 B.R. 782 (Bankr. N.D. Ill. 2010) as supporting case law for his argument that 401(k) contributions are allowable.  Notwithstanding the non-binding effect of *Larson* on this Court, Mr. Larson's situation was materially different from the Plaintiff. Mr. Larson was nearing retirement, had "minimal accumulated savings, meager income in comparison with his expenses," and a more frugal budget overall. *Id*. at 792.  The court's findings concerning 401(k) contributions in *Larson* are fact-specific, and the court noted that they were "not holding that the category of reasonably necessary expenses includes 401(k) contributions." *Id*.  The facts in the Plaintiff's case do not align with the facts the court considered relevant in allowing a 401(k) contribution in *Larson*. *See Educ. Credit Mgmt. Corp. v. Young Newchurch v. SLM Corp. (In re Newchurch)*, No. 05-11747, 2006 WL 3246593, at *3 (Bankr. M.D. La. Nov. 2, 2006) (holding that the plaintiff's diversion of $500 per month to his annuity, rather than paying his student loans, was an expenditure which "could be sacrificed without affecting the family's standard of living.").

funds.  A personal or moral sense of obligation to prepare for the future cannot supersede

a legal obligation to repay student loan debt.  *See Stebbins v. Tex. Guar. Student Loan*

*Corp. (In re Stebbins-Hopf)*, 176 B.R. 784, 788 (Bankr. W.D. Tex. 1994).  Third,

maintaining a security system during the course of bankruptcy is not a widely accepted

expense.  Outside of bankruptcy, it is not abnormal to forego maintaining a security

system.  The Court does not consider a security system to be a necessary expense.

Fourth, while Plaintiff cites *Ivory* as support for his claim that a home warranty

plan falls under a minimal standard of living, the allowance of a home warranty system

within the context of § 523(a)(8) in the Fifth Circuit would be atypical.  *See Ivory v.*

*Dep't. of Educ. (In re Ivory)*, 269 B.R. 890, 895-897 (Bankr. N.D. Ala. 2001).[16]

However, the Court finds the Plaintiff's monthly expenses for cable television, cell

service, and internet to be reasonable.  Other courts have found it reasonable for a debtor

to maintain some entertainment through cable television or a pet.  *Id*. at 899.  The Court

also finds the Plaintiff's explanation concerning his need for cell service and internet to

be persuasive.  The Defendants classify the Plaintiff's spending on a cell phone and

Internet access as "non-essentials."[17]  The Court disagrees.  Plaintiff needs a phone for

---

[16] This Court was neither able to locate nor is presently aware of a case within the Fifth Circuit in which a home warranty system has been at issue.  Regardless, maintaining such a system is not commonplace, and the Plaintiff's argument in favor of retaining one is unpersuasive.

[17] Defendants' Joint Motion, at 9, ECF No. 61.

**-11-**

work and to stay in contact with his children while they reside with his ex-wife.  In a

society where working from home has become more prevalent, maintaining internet

access is reasonable.

While the Court disagrees with the Defendants' characterization of some expenses

as non-essential, when considering the overall expenses underlying Debtor's present

standard of living and whether they would preclude payment towards student loan debt,

the Court finds that the Plaintiff does not meet the minimal standard of living prong of the

*Williams* test.  The Plaintiff's salary far exceeds the federal poverty level for a household

of three, and several of the Plaintiff's expenses could be redirected towards his student

loan payments, a legal obligation which supersedes such expenses.  The Court certainly

does not expect the Plaintiff to live in "abject poverty," but he has failed to show his

budget deficit is entirely the result of "reasonably necessary living expense[s]."  *Little v.*

*United States Dep't of Educ. (In re Little)*, 607 B.R. 853, 859 (Bankr. N.D. Tex, 2019);

*Salyer v. Sallie Mae Servicing Corp. (In re Salyer)*, 348 B.R. 66,71 (Bankr. M.D. La.

2006).  The Court finds that Plaintiff has not effectively minimized his living expenses

under the *Brunner* test.[18]

---

[18] The failure to meet one prong under *Brunner* is fatal to the inquiry of whether a debtor has shown undue hardship.  *Educ. Credit Mgmt. Corp. v. Blake (In re Blake)*, 377 B.R. 502, 508 (E.D. Tex. 2007).  In this case, however, the Court will proceed with the analysis of the other prongs of the *Brunner* test for the benefit of Debtor, who is *pro se*.

B. Additional Circumstances

The second prong of the *Brunner* test is meant to be a "demanding requirement," and requires that the debtor demonstrate an inability to pay in the future for reasons that are both outside the debtor's control and were not reasonably foreseeable.  *U.S. Dep't of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 92 (5th Cir. 2003) (citing *Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324 (3rd Cir. 2001)); *O'Donohoe v. Panhandle-Plains Higher Educ. Auth. (In re O'Donohoe)*, No. 12-33870, 2013 WL 2905275, at *4 (Bankr. S.D. Tex. 2013).  In the Fifth Circuit, the question under the second prong is "whether because of external factors, [his] present inability to pay [his] student loans and maintain a minimal standard of living will persist throughout a significant portion of the loan repayment period."  *Thomas v. Dep't of Educ. (Matter of Thomas)*, 931 F.3d 449, 452 (5th Cir. 2019).  Like the debtor in *Thomas*, the Plaintiff faces significant medical challenges but is able to work in a sedentary environment.[19]  In his responses to the Motion, Plaintiff has not produced admissible evidence concerning the future ramifications of *his* diagnosis on his life sufficient to raise a genuine issue of material fact.  Thus, the Court is unable to opine its future effect on Plaintiff's ability to

---

[19] *Williams v. Tex. Guaranteed Student Loan Corp. (In re Williams)*, No. 15-41814, 2017 WL 230349, at *7 (Bankr. E.D. Tex. May 25, 2017); *contra Blake*, 377 B.R. at 508 ("In order for a medical condition to be a factor, the bankruptcy court must show that the condition impedes the debtor's ability to work.").

work.[20]  The Plaintiff has failed to show that "additional circumstances" will persist for a

significant period.

C. Good Faith

The third inquiry under the *Brunner* test is whether Debtor has made a good faith

effort to repay the student loan.  *Williams*, 2017 WL 230349, at *7.  When determining

good faith, this Court has considered: "(1) the attempts by the debtor to maximize income

through employment while minimizing expenses; and (2) the number of payments the

debtor has made on the loan combined with any attempts by the debtor to negotiate

forbearance, deferral, or an income-contingent repayment plan."  *Id*. (quoting *Gnahoua v.

U.S. Dept. of Educ. (In re Gnahoua)*, 2016 WL 1238831, at *2 (Bankr. N.D. Tex. March

29, 2016)).  Under this prong, courts have acknowledged that undue hardship

"encompasses a notion that the debtor may not willfully or negligently cause his own

default, but rather his condition must result from 'factors beyond his reasonable control.'"

*White v. Educ. Credit Mgmt. Corp. (In re White)*, No. 07-41509, 2008 WL 5272508, at *6

(Bankr. E.D. Tex. Dec. 17, 2008) (quoting *Stein v. Bank of New England (In re Stein)*,

218 B.R. 281, 288 (Bankr. D. Conn. 1998)).  A debtor's "efforts to utilize alternative

---

[20] The Plaintiff's attempt to utilize information from a federal government website concerning his medical diagnosis is inadmissible under Fed. R. Evid. 901.  Plaintiff's Sealed Ex. 26.  It is addressed further below in this opinion.  Even if this evidence was admissible, however, the Court cannot consider the future effects of the Plaintiff's diagnosis without a professional medical opinion or interpretation of how, or if, his condition will deteriorate.

means to address one's student loan obligation" is indicative of good faith. *Pratt v. Educ.*

*Credit Mgmt. Corp. (In re Pratt)*, 375 B.R. 753, 763 (Bankr. S.D. Tex. 2007).

In this instance, Plaintiff has made payments on his student loans when able.

Plaintiff's failure to participate in the Direct Loan Program or income contingent

repayment program (the "ICRP") does not bar him from a showing of good faith. *See*

*O'Donohoe v. Panhandle-Plains Higher Educ. Auth. (In re O'Donohoe)*, No. 12-33870,

2013 WL 2905275, at *6 (Bankr. S.D. Tex. 2013).  The Court finds that the Plaintiff has

demonstrated good faith in his attempt to repay his student loans. *White*, 2008 WL

5272508, at *6.

## VII. Evidence Objections

In this ruling, the Court also disposes of various evidence objections raised in the

Motion and the related pleadings.  In Defendants' "Joint Reply to Plaintiff's Opposition

to Defendants' Joint Motion for Summary Judgment" (the "Joint Reply"), they object to

"argumentative and conclusory statements" made in Plaintiff's Opposition, arguing that

the statements are hearsay and subject to objection under Fed. R. Evid. 801(c) and 802.

Following this Joint Reply, the Plaintiff filed his declaration in support of Plaintiff's

Opposition.  After Plaintiff filed his declaration, the Defendants' filed a "Joint Objection

to Plaintiff's Declaration in Support of Plaintiff's Opposition to Defendants' Joint Motion

for Summary Judgment" (the "Joint Objection").  They objected that the declaration was

untimely, "an improper attempt to file a Sur-reply without leave of Court," and that it did

not substantively "cure Defendants' previous objections."[21]

      First, when ruling on summary judgment motions, courts may consider affidavits

based on personal knowledge setting out facts that would be admissible in evidence, and

showing that the declarant is competent to testify on the matters stated.  Fed. R. Civ. P.

56(e).  Second, *pro se* plaintiffs are normally held to a less stringent standard in pleading

documents, and are "entitled to a liberal construction, allowing all reasonable inferences

that can be drawn from their pleadings."  *Morgan v. Fed. Exp. Corp.*, 114 F.Supp.3d 434,

436 (S.D. Tex. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 521 (1972)).  However, *pro*

*se* parties must "still comply with the rules of civil procedure and make arguments

capable of withstanding summary judgment."  *Morgan*, 114 F.Supp.3d at 436 (quoting

*Ogbodiewu v. Wackenhut Corr. Corp.*, No. 99-50404, 1999 WL 1131884, at *2 (5th Cir.

Nov. 10, 1999)).  In this case, however, Plaintiff filed a response to the Motion.  While

untimely, Plaintiff attempted to cure issues of admissibility, not a lack of response.  The

Plaintiff's declaration was not a sur-reply.  Finally, the Defendants argue that the

statements in the Plaintiff's Response are argumentative and conclusory, but do not

---

[21] Defendants Joint Objection at 2, ECF No. 72.

Case 20-04028    Doc 81    Filed 07/26/21    Entered 07/26/21 15:14:21    Desc Main
Document    Page 17 of 20

specify to which statements they are referring.  The Court is not required to sift through the Plaintiff's statements to determine what is admissible without specific arguments from the Defendants.[22]  Thus, weighing the lack of specificity in the Defendants' argument with the Plaintiff's *pro se* status, this objection is denied and the Court finds that the declaration filed in support of the Plaintiff's Opposition contains statements which are not argumentative or conclusory.  The documents attached to the Plaintiff's Opposition not properly authenticated are also considered because Defendants' objection to them could be cured at trial.  As explained below, the Court did not consider the Plaintiff's opinion or interpretation of medical records and/or medical diagnoses.

Second, Defendants objected to the attachments to Plaintiff's Opposition.  They argue that the attachments, including medical records pertaining to the Plaintiff and his son, are not properly authenticated under Fed. R. Evid. 901 and constitute hearsay under Fed. R. Evid. 801(c) and 802.  While the Defendants' basis for their objections to these particular records is accurate, the Court finds that these attachments, although currently inadmissible in form, could be cured to become admissible at trial.  *See Lee v. Offshore*

---

[22]  While "unsubstantiated assertions are not competent summary judgment evidence," Rule 56 does not raise a "duty to sift through the record in search of evidence to support a party's opposition to summary judgment motion."  *Ragas v. Tenn. Gas Pipeline*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex Corp. v. Catrett,*, 477 U.S. 317, 324); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16, n. 7 (5th Cir. 1992), *cert denied*, 506 U.S. 832 (1992).  The same logic must apply to the Defendants' objection.  The Court will neither sift through unsubstantiated or conclusory statements made by the Plaintiff, nor will it sift through unspecified objections made by the Defendants.

**-17-**

*Logistical and Transport L.L.C.,* 859 F.3d 353, 355 (5th Cir. 2017) (citing 11 *Moore's*

*Federal Practice-Civil* ¶ 56.91 (2017); *see Jones v. UPS Ground Freight*, 683 F.3d 1283,

1293-94 (11th Cir. 2012) (finding that a district court could consider a evidence during

summary judgment if it "could be reduced to admissible evidence at trial or reduced to

admissible form.").  The hearsay objection is denied.

The Court agrees, however, with Defendants' objection to Plaintiff's provision of

an opinion or interpretation of medical records and/or medical diagnoses under Fed. R.

Evid. 702.  The Plaintiff could have cured his lack of an expert witness's testimony or

interpretation with an authenticated physician's letter stating their opinion or

interpretation of the Plaintiff's records and/or diagnoses.  The Court cannot, however,

consider either in form or substance, the Plaintiff's opinions or interpretations concerning

any medical diagnoses or records in its decision.  Plaintiff is not qualified to give such an

opinion, and thus the objection is granted.[23]

### VIII. Educational Loan

The Plaintiff contends that the student loans by Penn State are "private" loans

which should not be considered an "educational benefit" because they "were not used

---

[23] This information concerning the Plaintiff's medical diagnosis has some limited probative
relevance, and the Court notes that an objection as to weight given was not made.

solely for the Cost of Attendance as outlined by IRS guidelines."[24]  The Court disagrees.

In 2005, Congress added new language to § 523(a)(8) "in response to the growing trend

of commercial lending."  *Matter of Thomas*, 931 F.3d 449, 453 (5th Cir. 2019).  The Fifth

Circuit has held that "purpose, not use, of loan controls whether loan is within

Bankruptcy Code's educational-loan dischargeability exception."  *Murphy v. Pa. Higher*

*Educ. Assistance Agency (In re Murphy)*, 282 F.3d 868, 869 (5th Cir. 2002).  Although

*Murphy* was decided prior to the 2005 amendment, this reasoning is still applicable.

Furthermore, because Penn State qualifies as a nonprofit institution, the student loans at

issue fall under  11 U.S.C. § 523(a)(8)(A)(i).  *Id.*  The funds through which the Plaintiff's

loans originated "are administered by Penn State and are made under programs funded by

nonprofit institutions."[25]  Such loans are considered to be a "qualified education loan"

under the Internal Revenue Code (the "IRC").  26 U.S.C. § 221(d)(1).  Based on the plain

language of § 523(a)(8), the Fifth Circuit's reasoning in *Murphy*, and the definition of

"qualified educational loan" provided by the IRC, the Court finds the Penn State loan

subject to the dischargeability exception under § 523(a)(8).

## IX. Conclusion

Accordingly, upon due consideration of the pleadings, the proper summary

---

[24]  Plaintiff's Declaration, 3 ¶ 17, ECF No. 71.

[25] Defendants Joint Reply at 7, ECF No. 70.

judgment evidence submitted, the material facts admitted to exist under Fed. R. Bankr. P.

56 and E.D. Tex. Local R. CV-56(c), the relevant legal authorities, and for the reasons set

forth herein, the Court concludes there is no genuine issue as to any material fact and that

Defendants, the Department of Education and the Pennsylvania State University, are

entitled to summary judgment that the debts owed to them by the Debtor-Plaintiff, Jason

D. Eady, arising from student loans should be declared nondischargeable pursuant to 11

U.S.C. § 523(a)(8).  Thus, the Defendants' "Joint Motion for Summary Judgment" will be

GRANTED to that extent.  An appropriate order and judgment will be separately entered

in a manner consistent with this opinion.

Signed on 07/26/2021

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE